First case, or next case brought up this morning is 4090966, CMS v. ILRB, 4090966. Appearing on behalf of the appellant is Lawrence J. Weiner. Appearance on behalf of the appellee is Paul Rousset. Rousset. Rousset. Yes. And Jacob Pomerantz. Right. Have you gentlemen divided up your time? Are you both going to be speaking? Yes, sir. Have you told the court? Yes. Okay. Mr. Weiner, you may proceed, sir. All right. Reserve five minutes for the public. You can get it automatically. I understand. I'm speaking. May it please the court. Counsel. Again, it's a pleasure to be here before you. In this case, I think this case is illustrative. It really exemplifies what is happening before the labor board with respect to the state and, for that matter, other employees. Just as a matter of public record, there are 52,837 employees in the state of Illinois as we stand here. As I stand here when you sit here today. 2,487 are non-union. Only 2,487. So it's 95.5% are already unionized. And of the 2,487, there are presently pending petitions seeking the inclusion of an additional 1,700. So I just wanted to make that note. So who's the supervisor? Perhaps the governor? I think the governor is the only one, at least under the definition of managerial, that has final authority to formulate policies and therefore is the only one that maybe he's filed a petition too. I don't know. As of today, it's possible everyone else has. But to get to the point on this, this case really is about standards for inclusion and exclusion under the Act. And the facts necessary in order to raise an issue sufficient to obtain a hearing and even prevail at that hearing, an administrative hearing on those standards. As to the standards, it's also, of course, to the facts. But as to the standards, as with most arguments, if you start with a faulty premise or incorrect premise, you wind up with a faulty or incorrect conclusion. Similarly here, if the board starts with an incorrect premise, a clearly erroneous premise, it will wind up with a clearly erroneous conclusion. And that's what's happened in this and several of the other cases, some of which you've already remanded in the pentalogy of cases, the pentalogy of cases that was issued by this court on December 28, 2010, defining a number of the standards that should have been applied and should be applied in cases of this nature. In particular, for example, in the managerial exclusion, the administrative law states, among other things, quote, this is page 43 of her recommended decision in order, quote, it is the final responsibility and independent authority to establish and, and I want you to remember that word and, effectuate policy that determines managerial status under the Act. Your Honor, Justice Appleton, who wrote in the Illinois Commerce Case decision, which is on, which stated, which the labor board and the union filed a petition for leave to appeal, which is presently pending, but nevertheless, clearly stated that you didn't have to have the final authority. And as to the word and, as to the word and, I just would like to read to you one short sentence from the Supreme Court of the United States, which was adopted by both decisions of our Supreme Court in defining the managerial exclusion. An employee may be excluded as managerial only if he represents management interests by taking or, or recommending discretionary actions that effectively control or, or implement employer policy. So it's sufficient that you implement employer policy. You don't have to formulate it. You don't have to control it. You can even recommend it. And the recommendations don't have to be accepted rubber-stamped all the time. So there are two errors in the standard that's to be applied. Mr. Weiner, before you get into this too much, I wanted to point out something. Your name isn't on the brief. Right. I don't know if you wrote it. No, I did not write it. Well, I hope you'll carry back the message to your colleagues that they have performed a disservice to this court, and we don't like it. We expect the people who are, especially experienced people who are writing briefs for this court, to follow Supreme Court rules, not just suggestions. They're rules. And the statement of facts is supposed to be that. It's not supposed to be an argument. Your Honor, I couldn't concur more. I apologize for my firm. As you know, you've seen a dozen or more of my briefs. I know. And you've never had that. I've never been a scintilla of a shadow of a cloud of suggestion that in any way I would violate those rules. I apologize for my colleagues. Is this the firm you're with? Yes, it is. Well, maybe some internal controls would be helpful. I think they've been implemented. Good. And that's one of the reasons I'm here. Please carry that message back to them. And your apology is accepted. We understand it's not your doing, but nonetheless, it's the brief we have. You know, I did review that issue, and it's a little – I agree with your Honor 100%, so I'm not saying that. But it's a little different when you're talking about acts by a board and an administrative law judge, and you're trying to point out evidence they didn't consider. It's kind of hard not to be, quote, argumentative in that sense. I'm just – not by way of offense, just by way of explanation. I think your Honor's correct, but, I mean, I think I know what my partner was attempting to accomplish, and I don't think he was intending to violate any Supreme Court rules. Going back to the substance of it. So you have – so I'm going to move on to another matter. So the basis for the denial of hearings for 91 people, I believe it was, and for fining against the 41 that actually had a hearing on the managerial issues is based upon a false standard. One already found to be incorrect by this Court. One that was in violation before the Interstate Commerce Commission opinion by two decisions. Not one, two decisions of our Illinois Supreme Court. And yet they persist in providing it is the final thing, consistent, and that they have to establish and effectually, and effectively, establish it, establish it. Not true. It's not the law. And for that reason alone, this whole case should be either reversed as to those who had hearings or reversed and remanded as to those who haven't with the direction to apply the proper standard, particularly with respect to the managerial aspects of this case. But it goes beyond that. It really, it goes into the other areas as well. For example, in the supervisory matter, there were 3,598 pages of exhibits. Five offers of proof. And the hearing officer and the board by adoption said, not one, not one of these employees, 133 employees, had even one indicium, not one indicium of supervisory authority. In fact, they didn't use the word authority. They reference authority, but they really require much more than authority. They require specific examples as to each and every person as we appear before that board. But our Supreme Court has repeatedly held, in the Freeport case, and other cases, and our other appellate courts have held, that it's the authority that you have. And all you have to do is exercise one of the 11 enumerated indicium in order to qualify. What's the standard review in this case? I think it's clearly erroneous. It's clearly erroneous because you're mixing fact and law. We're required to suspend our disbelief? Well, you're required to find that a mistake has been made. And I don't think there's any doubt a mistake has been made as to each and every one of these standards for exclusion and exclusion. There's been a narrowing of the standards for exclusion and an expansion of the standards for inclusion into these units. Clearly, let's take supervisory, for example, the second part we're dealing with here. Again, they completely, really ignore the fact that all you have to have is the authority. You may be a mouse and not exercise that authority, but if you have that authority, you should be excluded. Or you may be a fabulous administrator and not have the necessity to discipline people because you're such an effective leader, but yet you still should, if you have that authority, you should be excluded from the unit. Or you may be incompetent and not disciplined at all, but if you have that authority, you should be excluded as a supervisor. That whole analysis, completely ignored. Again, 3,598 pages of exhibits dealing with the very set of conditions relating to supervisory standards. Completely, completely ignored. And again, we don't have to prove our case as you've held in your pathology. We don't have to prove that case. We merely have to show that there's a reasonable basis. There's a question, a question of representation. Those 91 people have been included. They shouldn't have been included. They should have been. As Jackie Zimmerman in her dissent stated, and I don't want to underestimate that dissent. In fact, I think that dissent really says it all. To understand it, Jackie Zimmerman was the former general counsel for that board for many, many years. She issued opinions on behalf of that board as general counsel. She's now the chairman of the board. She rarely dissents. Rarely dissents. Last time, I think, was a case before this court, the 2002 standardized layoff case, where she dissented, and this court reversed the board because they found, they believe they adopted that analysis. Here, here, and so she knows the law. She established a lot of the law. And here she says that the status of those in place found non-supervising admitted state of law judges in immediate order should have been determined through the hearing process. She finds also Andy Greppis was a confidential player. With respect to the section managers whose status was litigated at the hearing, I believe that the administrative law judge and my dissenting colleagues give too little credence to the facts which, in my opinion, demonstrate supervisory stance. In particular, I believe there was too much emphasis placed on the fact that the section managers were not solely responsible for the employment actions taken concerning their subordinates. Consultation with or review by higher management officials does not, in and of itself, indicate a lack of independent judgment or the inability to make effective recommendations. As for the employees determined to be non-supervisory without a hearing, the record demonstrates they performed functions similar to those whose status was litigated, and I would find that they were raised questions of factor law which should have been resolved through the hearing process. And that's true. With the supervisory status, they even applied a preponderance. The administrative law judges, the court said nothing about preponderance, but the administrative law judges adopted a preponderance of the evidence standard, and it's applied in the briefs here by the assistant attorney general, notwithstanding the fact that under the definition of supervisor in Section 3R of the Act, it says, and the jurors who devote a preponderance of their employment time to exercising that authority, state supervisors notwithstanding. The state is excluded. The supervisors of the state are excluded under, as I'm reading from the Act, by the words and language of the Act from the preponderance standard being applied. But even if it was applicable, the other criteria with respect to the supervisory status have been met, and certainly as to the ones that were denied a hearing, and as to the ones who were granted a hearing, it's, you know, I can't go into all 131. That was a problem that my partner had in writing this brief, obviously. But, I mean, I think it's pretty obvious that they meet. The request for a supplemental briefing, by the way, Mr. Weiner, was because... I did that. Well, the initial brief was hardly clear on who was even being spoken about here. I understand. And this was accepted by my colleagues without question on that. So independent judgment in particular was very narrowly, well, was very narrow, a restrictive and narrow definition to independent judgment, as was the definitions regarding confidential, which again tie into the... they were confidential to their superiors, the subordinates were confidential to their superiors, who had to have the final authority, et cetera. Also, with respect to confidential, it was very narrowly drafted to just basically apply to collective bargaining and the actual participation in collective bargaining, as distinguished from the participation in basically labor relations policy, including the administration of the contract. So, in conclusion, I think that this case should... We didn't have even a chance as to the 91 employees, and all 133. The other interesting part, and I want to close on this, the other interesting part is that we're now at a very high level. You can understand, perhaps, that the lowest conceivable level of when an organization initially started and that a substantial number of people, particularly those not including regular supervisors, managers, confidential people, would be included. But now we're at the PSA. You're about to get about several, quite a few cases on administrative reviews. I've already filed two, I believe, this year on SPSAs. What's that? That's the highest level of employee in the state of Illinois other than heads of state. Senior public service employee? Yes. So you're appealing the board's rulings in those cases too? We're losing those cases. Every one of them almost. Almost every one we are. Based upon these criteria. It all goes back to the initial premise. The decisions are very logical. You read a decision and say, oh, my God, that's, yeah, that conclusion necessarily flows from that standard. But it's the wrong standard. And I think this court has already and should continue to apply the law as interpreted by our Supreme Court and as written in the statutes. Thank you. Thank you, counsel. Ms. Larissa? Has the Supreme Court taken any of these cases yet? They're all on PLA. Of the five cases that were decided, the pentology, as I refer to it, because I think it will be known by then. I lost the pharmacy director case. We have no nonunion people at any of our pharmacies anymore. So I appealed from that decision. And filed a petition for leave to appeal. And the union and labor board have filed PLAs on all of the four remaining. But the court hasn't allowed any PLAs yet? No, they haven't acted upon it to my knowledge. Okay. Thank you, counsel. Mr. Reset? Good morning, Your Honors. May it please the court. My name is Paul Reset. I'm an assistant attorney general for the state of Illinois, and I represent the Illinois Labor Relations Board. To avoid duplicating our arguments, I'm going to address the board's determinations regarding those PSA 2s that were not given a hearing in Mr. Pomerantz. Let me ask you, given my attention span difficulties, to begin, if you would, by addressing the last point Mr. Weiner made, that the wrong standard is being applied by the board. Is he right? Well, it seemed like what he was talking about for the most part was about the managerial exclusion and about the substantive standard for that. And that actually only applies to a very small number of these employees, those coordinators at revenue that write the policy guide. So for the vast majority of these employees, it wouldn't even be on point. But obviously we don't agree with his position that the board applied the wrong substantive law. The board has expertise in these matters. Well, he seems to break it down to a problem of or instead of and. Is he right on that? I don't believe so. So you think the board is correct in viewing these requirements as all being conjunctive instead of alternative? Well, in this case, we don't even need to get to that point, because these coordinators, all they were doing, they were not making policy at all. All they were doing was translating the policy into common English for example. They would write pamphlets about how do you take a mortgage, well not the mortgage interest deduction because it's a state, but different credits and things like that. So that's all they were doing here. So even if the standard is slightly changed based on the decision in Commerce Commission, it would not affect the case under these circumstances. As I was saying, Mr. Pomerantz is going to address the board's determinations regarding those Regarding the denial of the hearing for the 91 employees, I think it's important to remember that the petition for a unit or inclusion in the existing RFC62 unit was for over 500 people. So the party, CMS and the union, actually agreed to exclude and include certain people who clearly either belonged in or out of the unit. So when he talks about how no one got a hearing or no one prevailed at that hearing, the people that did get a hearing, we're only talking about a segment. I mean, there were people that by agreement of the parties were excluded from the unit. Now back in October of 2007, two things happened. One was that CMS submitted an offer of proof regarding those PSA2s that worked at the Department of Revenue. And in that offer of proof, they attempted to show that there were issues of factor law that required a hearing. Also that month, the ALJ, began holding hearings regarding most of the revenue PSA2s. And those went on for five days. And at the end of the hearing, the ALJ realized that for a lot of these people, they weren't coming anywhere near to meeting the criteria for an exclusion. So she asked CMS to submit supplemental offers of proof that went into greater detail about what CMS planned to show because in her opinion, it had been incomplete involving only certain of the PSA2s, the initial offer of proof, and that it was extremely conclusive. They would say things like, you know, these people have authority, but they wouldn't give specific examples. So CMS then submitted these five additional offers of proof. And after the ALJ reviewed them and the responses from the union, she determined that some of the employees, there were 25 that were considered at the initial hearing in October of 2007. She decided that about another 15 or so, there were significant questions of law and fact regarding whether they should be excluded. And those were scheduled for additional days of hearing. But then she found that regarding the other 91, that there really weren't reasonable questions regarding whether or not they should be excluded from the union. So those were the ones that were not allowed a hearing in this case.  not be given a hearing. CMS suggests in their brief that they're entitled to a hearing in virtually every case, any time that they ask for one. But that argument is incorrect. It's been rejected by the first district repeatedly, and it was also rejected by this court in two published opinions that came out in late December of 2010. Those decisions came out two months after I filed my brief, and I just learned of them last week when I was updating the law. So if the court would like, I could move to cite supplemental authority, but you're probably familiar with them since they're both published opinions of this court. One involves the Human Rights Commission ALJs, and one involves the Civil Service Commission ALJs. As this court noted earlier, you do review the board's determination not to schedule a hearing for these particular employees under the clearly erroneous standard, and that would require you to reach a definite and firm conviction that a mistake has been committed. And we don't think that that's the case here, where the Act itself contemplates exactly this procedure. In Section 9A of the Act, the board's instructed to consider the evidence gathered prior to a hearing being held, and determine whether it's sufficient enough to warrant a hearing. If they're nowhere close to showing that any of these exclusions apply, then in the interest of economy and saving time and money for the parties, the Act contemplates that the board can either dismiss the petition if it finds that these people really don't belong in a union, or they can grant a representation request, as they did here. And as I say, it's clear they're not entitled to a hearing in virtually every case under both those First District cases and those Fourth District cases that follow the First District cases and are even more recent. Now it should be noted that although the ALJ gives specific reasons for each of the PSHUs that were not scheduled for a hearing, CMS's brief doesn't talk about any of those individual determinations, the particular circumstances that apply to those employees, what their jobs are, what their duties are. So there's no way to respond to that. They're just sort of making an overall argument that we're entitled to a hearing in every case, and we know that that's not the case under the law. They made no attempt to say, you know, Mary Smith assigns work, Joe Smith disciplines people. So it seems that they have no difference with the ALJ's findings based on the particular aspects of each case. The unions asked me to note, because I'm doing this argument for both parties, that they have included a specific waiver argument in their brief where they talk about how because CMS has not attacked the particularized findings of the ALJ that they basically have waived or forfeited as the current term tends to be any challenge to the denial of the hearings for the 91 employees. CMS also argues that the standards for a motion to dismiss or for a summary judgment motion should be applied here, but they cite no authority for that. And the legislature has determined what the standard should be and has put it right into the act. It's whether there's reasonable cause to believe that a question of representation exists. That's the standard that the board applied. We don't think that the board was clearly erroneous in finding that here there were no questions for these 91 employees. What about the persuasiveness, as Mr. Weiner argues, of the dissent by Ms. Zimmerman? As this court is no doubt aware, you're familiar with dissents, and dissents are very interesting, but they're not a decision of the board. That wasn't my question. He argues it's persuasive and we should adopt it. Why is he wrong? Well, he was saying that because she's the general counsel and the chairman that she carries greater weight somehow. I didn't mention her status. I just mentioned the reasoning that he cited. Well, why is it wrong? Well, her analysis is very brief, so there's not a lot to respond to. But basically she said, number one, that she thought that all supervisory exclusion, people should have been excluded from the unit, the ones that were given a hearing, and the ones that weren't should have been allowed a hearing. And her reasoning was that the majority placed too much emphasis on the point that these people consult with their supervisors in taking some of these actions that are supposedly in disshow of authority. But she's wrong here because one of the things you look at is whether they exercise independent judgment. And for the most part, as the majority pointed out, the things that they did independently either didn't affect the terms and conditions of employment, for example, if they counseled someone. Let me ask you about this exercising independent judgment. It seems to me that there's an overarching theme here, and I want to see if I understand it correctly, that if someone who is in allegedly a supervisory or managerial position, supervising other employees before imposing discipline or before taking other serious steps, consults with a supervisor of the supervisor, that that renders this no longer a supervisory position. Is that essentially the position of the board that you're defending? No. It's not a blanket rule. It depends on the degree of oversight that the supervisor's supervisor is involved in. For example, if they exercise no independent review and basically defer to the putative supervisor's decision, then that would be enough for... I see my time's up, so I'll just... Well, go ahead. I want to hear your answer. That would be enough if there's basically no review by the supervisor's We're talking about over 100 separate cases here, and it's my distinct impression, I can't give you a specific example, but it's my impression that there is some reference in these findings about, well, if John Smith first consulted with his supervisor before taking this action, then he's not a supervisor. There was nothing about John Smith's supervisor having to really do more or whatever, and that just seems to me, if that were the standard, officers in the military would be... None of these people would be supervisors either, probably up the entire chain through maybe general officers. Right. Well, if I gave that implication in my brief, I apologize if the board... No, it wasn't your... It was the findings by the ALJ. Well, I think that she did not mean for it to be interpreted that way. I think here, if we could talk about discipline, because that's something that there was a lot of evidence about. The time when they acted independently were things like counseling, which actually doesn't formally constitute discipline, or they put someone on proof status if they had a lot of leaves of absence. Those aren't significant enough to affect the terms and conditions of employment. However, it looked like when they wanted something more substantial, like suspension or this or that, they could bring the matter to their supervisor's attention, but it was that supervisor that was really making that decision. They weren't even making effective recommendations, which is another way that they can qualify. So here, they were sort of like just referring the information to their supervisor, and then their supervisor is the one that's making the decision. So it's your sense that the person who in the first instance is deciding whether or not discipline should be imposed, and a recommendation of it, even if it's not the final word, and then passes it on to that person's supervisor, that's not a supervisory position? It depends, again, how much. For instance, is there any evidence in these cases that the supervisors acted independently with regard to the employees, so that there would ever be discipline imposed without first coming through the alleged supervisor the first time? There were so many different fact situations, but in different fact situations, there was more authority than others, but the board's decision was that none of them reached the level where they would qualify as supervisors. Doesn't seem to make any sense to me, counsel. I don't understand how that can be. Well, I mean, this applies in police department cases, or analogous to the military as well. It depends on how much the supervisor is referring to that putative supervisor, and just bringing the matter to the supervisor's attention that, hey, this person left four hours early and didn't punch out, maybe we should discipline them, isn't the same as saying, I recommend that they be suspended, and then the supervisor's supervisor basically just going along with it. I mean, there's a sliding scale, and some cases kind of fall in the middle, but basically the fact that they do collaborate doesn't mean that the lower person is not a supervisor, but the board found here that they did not have enough independent exercise of judgment to qualify as supervisors themselves. There are 136 cases up here in appeal, and in all these cases, none of these people were supervisors? Well, they weren't all claimed to be supervisors, but, yeah, the ones that were. And it may just be that CMS is trying to push the envelope and, you know, asking that people be excluded that really shouldn't be. So, I mean, if that's the case, then the board should deny them all. I think I'm going to let Mr. Pomerantz. Thank you, counsel. Mr. Pomerantz? My name's David Pomerantz for American Federation State County Municipal Employees. I think this case, this appeal, can be divided into two parts. There's the written part, and that's what Mr. Weiner talked about this morning. In the written part, the appellant's petitioner is treating the court as if it were another ALJ. It's saying, look at all these facts. Look at all these facts and, you know, give us the judgment that we want. But our Supreme Court has said a long time ago that that is not the role of the court in regard to these labor board matters. We are to affirm, the court is to affirm the administrative agency unless the rulings are, when they're applying the law to the facts, fairly erroneous. And in their briefs, they don't argue that. They assert facts that they asserted before the ALJ, but they ignore the facts that the ALJ found. They don't describe why the ALJ was in error when she says that, oh, this only happens sporadically. Or when she says that, no, the putative supervisor can't act independently. They don't take issue with that. And by and large, they don't take issue with the board's statement of what the law is that should be applied. Now, Mr. Weiner, this morning, admittedly, is talking about, you know, the legal definition of certain standards. And in much of what he's saying, he's asking you to really not act as an ALJ, but act as a super legislature. Well, we don't like what the legislature did. Look at the results. We don't like those results. You, the court, you know, maybe you don't like it either. Just stand in the shoes of the legislature and change the law. The managerial definition, for one example that Mr. Weiner brought up this morning, has the word and in it. He wants you to take out the word and because he thinks it doesn't make good policy, they don't like the results, and put in the word or. Well, in all due respect, that's not the role of the court.  Admittedly, it's hard to capture just the right phrases. You know, it's not arithmetic. It really depends. It's very fact specific. So you can't say this is because somebody made a recommendation that they're not a supervisor, nor can you say the fact that they made a recommendation makes them a supervisor. You have to look at the totality of the situation. So if in the totality of that situation, what the putative supervisor or supervisor is looking for is what happened. I'm listening to you to hear what happened so I can evaluate it and I can make the decision. You want to give me your recommendation? Fine, give me your recommendation. What I'm looking for is a report. That putative supervisor is being treated like a quality control person. He's to report defects that are coming off the line. What's to be done about it is vested in a higher person. Or it could be a situation where there's really no discretion. There's no independent judgment involved. You know, the rule says you party three times, you get this. Okay? You've been partied three times, you get that. That does not indicate that that person, that putative supervisor, has been vested by the employer with a discretionary authority so that there can be a conflict. Does that make any sense to you, Mr. Pomerance? I mean, in the real world? I mean, you know, we're all adults here. I mean, so, for instance, the putative supervisor who has an employee who's been tardy for three times, what if he doesn't view it as tardiness? You know, there was an exceptional circumstance and he's not going to view it as a tardiness. Then he doesn't have the discretion and he's not doing his job. He's not doing his job. So in the real world, that's how things work, is your argument? Well, the real world is a very big place. So in the military, you know, it might work one way. And in different kinds of organizations, it works another way. But clearly there are many timekeepers out there in the real world who know when somebody's tardy and don't, and they're not supervisors. And they may even tally it at the end of the week and say, they might have a pre-printed form, three tardies equals one record man, and hand that out. That doesn't make them a supervisor because there's no conflict with the union. That's the rule. This guy's job is to apply the rule. There's no area where his discretion comes in conflict with the union rule. If he doesn't do it, he can be fired for not doing his job. It's as simple as that. Now, Mr. Weiner is really, and we'll talk about this in a minute, Mr. Weiner is really talking from an NLRB perspective. The private sector has got longstanding labor rules, and our legislature very well knew about them. Our courts have said that certain times NLRB precedent is useful in explaining certain concepts, but other times when our legislature adopted a law fairly opposite of what the NLRB was doing, it was with the intent that the NLRB precedent does not apply. And we can't just, we shouldn't just ignore that. What is the NLRB precedent that does not apply in this case? Well, clearly the notion that supervisors have much, you need to show much less to exclude a supervisor from the benefits of the act. And that's based upon statutory language? Statutory language. What is the statutory language? Well, the preponderance requirement is one, and the other would be the fact that, and there is an NLRB law that does change over time in regard to the amount of independent judgment that's involved, and the amount of what effective recommend means. And admittedly, the NLRB changes with administrations as to what those terms mean. In terms of Ms. Zimmerman, whatever importance we give to Ms. Zimmerman, and we should ignore her biography, then it's three times more important than the other three labor board members who voted in favor of the ALJs. I'm not interested in biographies. I'm interested in the persuasiveness of reasoning. What about it? Why isn't it persuasive? Because she doesn't point to anything. It's a very broad generalization. The ALJ's decision is very specific, both the intermediate decision and the ALJ decision after the hearing. And actually, the board's discussion of the law and facts are pretty comprehensive as well. And Ms. Zimmerman gives, well, I think they're supervisors because it seems to me that you can't just say that because they make recommendations that, because they're making recommendations somebody considers it, that doesn't make them supervisors. What facts is she talking about? What facts in the record is she pointing to? We don't know. So it's really hard to take issue with her, whether, you know, for good or bad. But we do know what the majority is pointing to. What do they identify? Sorry? What do they identify? Well, it's a pretty long decision, and the ALJ's very factual fact-finding decisions are very detailed. And they are talking about how the ALJ correctly, in each circumstance, was an issue, determined whether the discipline that resulted from the getting together of the putative supervisor and the supervisor's supervisor indicated that the putative supervisor had independent judgment. Remember, our Supreme Court has held in the firefighter's case that the supervisor has to have independent judgment, has to have a choice between meaningful alternatives. And secondly, whether there was effective recommendation involved. Many of these disciplinary cases involve, these individuals, involve situations where they testified to the fact that they were told to discipline somebody. They didn't even know about the situation. They were told, you know, this happened, give them a reprimand. And other times they were made by, I think this guy should have gotten something. And the putative supervisor's boss says, no, we're going to, for whatever reason, not give them something. That would indicate that the authority above is not just theoretical or formal. It's active. The authority resides in the supervisor's supervisor and not in the supervisor. You know, the NLRB, which is more restrictive, was not intended to exclude team leaders. And what you have mostly in these situations are team leaders. You don't have people at the highest level of the agency not standing in Mr. Weiner's sphere. Why did the Illinois legislation provide that there would be certain employees who would not be, who would be excluded from unionization? I don't know. I really don't know why they did. You're a labor lawyer and you're at a total loss for any possible explanation of that policy. Is that right? Well, no, you didn't ask me for any possible explanation. Okay, well, give me a guess. I do know that when General Electric hires a new CEO, he has a bargaining agent. They all have bargaining agents. So I don't really see what the danger to our polity is to have people high up in the bureaucratic. So it's your position that if we were 100% unionized with all 58,000, that would be just fine? No, I don't. There is a policy that would be violated there? I think the people who are directly, who respond directly to the electorate, people who are elected. So perhaps the governor. Part of the team, the governor and his policy team, because they report directly to the electorate. They're the boss. So the governor and his 12 top aides and the other 58,000 are all members of the union? It's somewhere in between there, but closer to the governor and his top aides. So governor, his top aides, the top aides' immediate appointees, the people who, in the words of this court, really run the show. And that's what the legislature intended to achieve when they put in that union exclusion provision? Well, I don't know. That's why I'm asking you. I do know they meet once a year. And if they don't like the results, they can change it. Who meets once a year? The legislature. Every year they meet. Every year they can change the law. What the board decides and what the courts interpret the board decisions are not a secret. And that's their job. They answer to the electorate. Okay. Thank you, Mr. Brommer. Your time is up. Mr. Weiner, your rebuttal, sir? I guess they finally came out and admitted they want everybody but the governor. Okay. And his top 12 aides or so. And his top 12. So I think that that really, I can't say anything after that. I mean, it's like so amazing. Nobody can evaluate people. Nobody can supervise people that don't have an inherent divided loyalties, an inherent conflict of interest. We can't run anything in the state. There will be less than 700 and some odd people left if their petitions are granted, which they will be and will be before you on them. And they're the SPSA, which by definition cannot be members of unions. But they're wanting them to be members of unions. They don't include term employees. They include every, it's without, no prisoners, no prisoners, no survivors. We're going to all be members of unions. Maybe I can get union benefits. Going to the merits, though. You know, it's interesting. He said sporadically perform, you know, dealing with supervisors. It's not whether they sporadically perform or don't. It's whether it's part of their regular duties. Even if it is sporadic, it's part of their regular duties. Again, a misapplication of a very subtle proposition of law. As to the managerial aspect, our courts, I believe it was this court if not the Supreme Court itself, has said that our managerial provision was derived from the Supreme Court's definition. And in the ICC case, this court so held and referenced Yeshiva just like our Supreme Court did in several applications. And this Supreme Court and this court did in its other decisions in 1997. But just to clarify the record, there were 530 petitions for employees. We contested 150. All of which have been included except for their 10, really, that were out. And two of them got lost in the shuffle by everybody. And then eight were the union agreed could be excluded. And they're the only eight of 530. It wasn't the other way around. I think he misstated it, but it was inadvertent. It is about facts, but it's also about standards. And there was more than sufficient evidence in our offers of proof. He said we should have gone into the detail. We couldn't. We only had page limitation. But we did incorporate by reference all of our exhibits and our offers of proof. And I would rely upon those for reversing the board as to the people who were afforded a hearing and reversing and remanding as to those employees who were not. Thank you. Thank you, counsel. Thank you for your time and advice.